# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MIQUIEL BANKS,

      Plaintiff,

v.                                     Case No: 8:14-cv-2701-T-17JSS

IGOV TECHNOLOGIES INC.,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT ON COUNTS II AND IV OF COMPLAINT

This case came before the Court upon consideration of the *Defendant's Motion for Summary Judgment and Memorandum of Law* (Doc. No. 52) (the "**Motion**") filed by the Defendant, MA Federal, Inc. d/b/a iGov Technologies, Inc. (the "**Defendant**" or "**iGov**"), and the *Plaintiff's Motion for Statement of Undisputed Facts in Opposition to Defendant's Alleged Statement of Undisputed Facts* (Doc. No. 56) (the "**Response**") filed by the Plaintiff, Miguiel Banks, *pro se* (the "**Plaintiff**" or "**Mr. Banks**"). For the reasons set forth below, the Motion is **GRANTED**, and the Clerk of Court is directed to enter judgment in favor of the Defendant on Counts II and IV of the Plaintiff's *Complaint* (Doc. No. 1) (the "**Complaint**").

## I.    Introduction

In Counts II and IV of the Complaint, the Plaintiff, who is an African American, seeks damages for retaliation and racial discrimination under Title VII of the Civil Rights Act of 1964 ("**Title VII**"). In essence, the Plaintiff contends that he was "singled out" and ultimately terminated by the Defendant for violating company policies that non-minority employees and contractors were permitted to violate with impunity. In addition, the

Plaintiff asserts that he was terminated in retaliation for protesting racial discrimination at iGov. The Defendant, for its part, disagrees and asks the Court to enter summary judgment on the Plaintiff's Title VII claims because, among other reasons, the record is devoid of any evidence that could create a genuine dispute as to whether iGov terminated Mr. Banks based on his race.

As set forth in previous orders of the Court, Count II of the Complaint is for retaliation under Title VII, while Count IV is for racial discrimination under Title VII. In order to make a prima facie case for retaliation under Title VII, the Plaintiff must cite to record evidence that, among other things, the Defendant engaged in a "statutorily protected activity," and that his participation in that activity was a "but for" cause of his termination. In order to make a prima facie case for racial discrimination under Title VII, the Plaintiff must cite to record evidence that, among other things, he was "qualified to do his job," and that despite his qualifications he was replaced by someone outside of his protected class, or that "substantially similar" persons outside his protected class received more favorable treatment than he did. If the Plaintiff carries his initial burden, the Defendant is required to proffer evidence that the Plaintiff was terminated for a legitimate, non-discriminatory reason. If the Defendant can meet this intermediate burden, the Plaintiff then has the ultimate burden of presenting evidence that the proffered reason for his termination was a pretext for racial discrimination and/or retaliation.

After reviewing the Motion, the Response, and the undisputed facts and record evidence, the Plaintiff has failed to cite to sufficient record evidence to establish a prima facie case for either retaliation or racial discrimination under Title VII. As to the Plaintiff's racial discrimination claim, Mr. Banks has failed to cite to evidence indicating that he was

"qualified for his job" at iGov, and even if there is a dispute as to his qualifications, the Plaintiff has failed to identify a "similarly situated" person outside his protected class who was treated more favorably. As to the Plaintiff's retaliation claim, Mr. Banks has failed to cite to evidence that he engaged in a "statutorily protected activity," but even if he did, the Plaintiff has failed to cite to evidence that such activity was a "but for" cause of his termination. In sharp contrast, the Defendant proffered that Mr. Banks was fired for a legitimate, non-discriminatory reason, namely violations of its policies regarding attendance and dress code, and for submitting work product that contained errors.

Finally, and most importantly, the Plaintiff has failed to identify any record evidence of racial discrimination at iGov, nor has he produced any evidence that he was retaliated against for protesting racial discrimination. As a result, even if the Court were inclined to find that the Plaintiff had made a prima facie case for retaliation and/or discrimination under Title VII, summary judgment would be appropriate because iGov has proffered a legitimate, non-discriminatory justification for the Plaintiff's termination, and Mr. Banks has failed to carry his ultimate burden of citing to evidence that his termination was racially motivated. For those reasons, all of which are discussed in more detail below, iGov is entitled to judgment as a matter of law.

## II. Background

### A. Procedural Background

On October 27, 2014, the Plaintiff filed his Complaint against iGov and various other persons employed by and/or associated with the Defendant.[1] The Defendant filed

---

[1] The Court has since dismissed the Plaintiff's claims as to all parties except for iGov. (Doc. No. 64). In this order, all references to iGov and the since-dismissed individual defendants shall be to "iGov" or "Defendant."

an answer to the Complaint and a motion to dismiss on December 18, 2014. (Doc. Nos. 9 & 10). On June 22, 2015, the Defendant filed the Motion, along with *Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment* (Doc. No. 51) (the "**Statement of Facts**"), seeking summary judgment on the Plaintiff's Title VII claims, in addition to the other counts contained in the Complaint. On June 28, 2015, the Defendant filed the Response. Subsequently, on July 28, 2015, the Court entered an order dismissing all counts of the Complaint, except for Counts II and IV. (Doc. No. 64).

In the meantime, the parties have been engaged in a cumbersome discovery process. For instance, on May 13, 2015, United States Magistrate Judge Mark A. Pizzo entered an *Order* (Doc. No. 64) requiring the Defendant to pay iGov's reasonable attorney's fees related to his failure to comply with outstanding discovery obligations. After iGov and the Plaintiff were unable to reach an agreement on the payment of those fees, United States Magistrate Judge Julia Sneed entered a report and recommendation that the Plaintiff be barred from introducing any evidence at trial that he has not previously produced to Defendant because the "Plaintiff has repeatedly disregarded procedural rules, his discovery obligations, and his obligations to opposing counsel." (Doc. No. 94). In addition, the Defendant served requests for admissions on the Plaintiff on April 17, 2015 (the "**Requests for Admissions**"). The Plaintiff did not timely object to or respond to the Requests for Admissions.

### B. Factual Background

The parties have been unable to agree on a joint statement of undisputed facts for purposes of resolving the Motion. Instead, the Defendant has submitted the Statement of Facts, which it contends are undisputed, while the Plaintiff has objected to and re-cast some of those facts in his Response. As a result, the Court has painstakingly reviewed

both parties' versions of the facts in order to create an undisputed statement of facts to serve as the record for summary judgment. In so doing, the Court has treated facts admitted by virtue of the Plaintiff's failure to timely respond or object to the Requests for Admissions as undisputed.

### 1. Mr. Banks' Employment at iGov

The Defendant is an engineering and management company that provides services to the federal government, including the United States Special Operations Command and the United States Marine Corps. (Statement of Facts, at ¶ 1-2). The Plaintiff, who is African American, was hired by iGov as a technical writer in Tampa, Florida on October 17, 2012. (Statement of Facts, at ¶ 3). While iGov subcontracted with other technical writers, Mr. Banks was the Defendant's only employee working as a technical writer from at least October 22, 2012 until September 12, 2013. (Statement of Facts, at ¶ 6; Statement of Facts, at Ex. G). The subcontractor technical writers were subject to a different compensation structure than employees like Mr. Banks, and had separate job duties and responsibilities. (Statement of Facts, at ¶ 6; Response, at ¶ 24). For example, while the Plaintiff was required to work at least 40 hours per week under iGov's "core working hours" policy, the subcontractors were not permitted to exceed 40 hours of work in any given week. (Statement of Facts, at ¶ 6-7; Kenney Decl. at ¶ 10). Moreover, from a substantive perspective, Mr. Banks' job responsibilities as a technical writer differed significantly from those of iGov's subcontractor technical writers. (Response, at ¶ 24).

### 2. Attendance and Dress Code Polices

At or around the time he was hired, the Plaintiff received and acknowledged iGov's company handbook, which contained iGov's policies regarding attendance, dress code,

and various other matters. (Statement of Facts, at ¶ 5; Statement of Facts, at Ex. G). Pursuant to iGov's company handbook, iGov's core hours of operation were from 7:30 a.m. until 5:30 p.m. (Statement of Facts, at Ex. D). Apparently, however, iGov's "core working hours" during the term of the Plaintiff's employment were slightly different than as set forth in the policy manual, and instead ranged from 8:00 a.m. to 5:00 p.m. (Statement of Facts, Ex. G). Pursuant to the handbook, employees were required to obtain approval from their manager to leave work early, and were required to notify their manager in advance of anticipated tardiness or absence. (Statement of Facts, at Ex. D; Statement of Facts, at Ex. G). Full-time, non-exempt employees were required to work a standard 40 hour week unless management approval was obtained in advance for use of leave, or to deviate from iGov's normal eight hour workday. (Statement of Facts, at Ex. D). According to the employee handbook, regular and consistent attendance and punctuality were considered "essential conditions of employment," and failure to abide by iGov's attendance policies could lead to disciplinary action, up to and including termination. (Statement of Facts, at Ex. D).

At or around the time Mr. Banks was hired, iGov and the Plaintiff agreed to modify the "core working hours" policy in favor of a "flexible work schedule" to facilitate Mr. Banks' class schedule at St. Petersburg College. (Statement of Facts, at ¶ 7; Statement of Facts, at Ex. G). Under the flexible work schedule, Mr. Banks could work from home and/or leave work early to facilitate his classes. (Statement of Facts, at ¶ 7). The parties originally agreed that Mr. Banks' flexible work schedule would end at the end of the fall 2012 semester. (Statement of Facts, at Ex. G). However, iGov agreed to extend the Plaintiff's flexible work schedule through the end of the spring 2013 academic semester;

following which time Mr. Banks would have to abide by the normal core working hours at iGov. (Statement of Facts, at Ex. G).

Moreover, pursuant to the iGov employee handbook, employees were expected to dress in "professional business" attire consistent with the work they performed. (Statement of Facts, at Ex. D). Suits, sport coats, slacks, and Khakis were deemed appropriate, while sweatpants, gym wear, and tank tops were deemed inappropriate. (Statement of Facts, at Ex. D). On Fridays, employees were permitted to wear jeans and athletic shoes. (Statement of Facts, at Ex. D). iGov's warehouse employees were subject to a different dress code than office employees (Statement of Facts, at Ex. G).

### 3. Mr. Banks' Job Responsibilities and Expectations

As a technical writer, Mr. Banks was primarily responsible for preparing technical reports, brochures, and manuals. (Statement of Facts, at ¶ 5). To perform those duties, iGov expected the Plaintiff to possess strong writing skills and have an attention to detail. (Statement of Facts, at ¶ 5). iGov also expected the Plaintiff to produce work product that was substantially error-free, grammatically correct, and properly formatted. (Statement of Facts, at ¶ 5). The Plaintiff does not appear to dispute the Defendant's characterization of his job responsibilities as a technical writer, nor does he appear to dispute its expectations regarding the quality of his work product. (Response, at ¶ 5). Rather, the Plaintiff disputes that his work product was subpar based on positive feedback that he received from various iGov employees and contractors. (Response, at ¶ 5).

### 4. Plaintiff's Failure to Comply with Attendance Policy

The Plaintiff's performance issues at iGov included documented incidences of him arriving to work after 8:00 a.m., leaving work before 5:00 p.m., and being written up for subpar job performance. (Statement of Facts, at G). For example, on April 1 and 2, 2013,

the Plaintiff took paid time office without providing notice to iGov until approximately 4:00 p.m. on the afternoon of April 1, 2013. (Statement of Facts, at ¶ 12). On April 5, 2013, at least one iGov employee met with Mr. Banks to discuss the Plaintiff's job performance. (Statement of Facts, at ¶ 13). Mr. Banks attended that meeting wearing sweat pants, and was reminded to adhere to iGov's dress code, as set forth in its employee handbook. (Statement of Facts, at ¶ 13). Mr. Banks was also reminded that he needed to obtain manager approval before taking paid time off or deviating from iGov's core working hours. (Statement of Facts, at ¶ 13).

Thereafter, on April 29, 2013, Mr. Banks emailed an iGov manager to inform him that he was leaving the office early because he had worked additional hours over the weekend. (Statement of Facts, at ¶ 18). Mr. Banks then left the office without obtaining iGov's prior approval. (Statement of Facts, at ¶ 18). On April 30, 2013, iGov employees again met with Mr. Banks and clarified that it was iGov's policy for employees to have to obtain prior approval before leaving work early, working from home, or taking paid time off. (Statement of Facts, at ¶ 20). Nevertheless, on June 24, 2013, Mr. Banks arrived to work late and was later observed leaving work early at 3:00 p.m. (Statement of Facts, at ¶ 26; Statement of Facts, at Ex. G). When confronted about why he was leaving the office early, the Plaintiff told an iGov employee that "It'll be okay." (Statement of Facts, at ¶ 26).

On July 1, 2013, iGov met with Mr. Banks and issued him a Performance/Disciplinary Action Form. (Statement of Facts, at ¶ 27; Statement of Facts, at Ex. G). The Performance/Disciplinary Action Form outlined the Plaintiff's job performance issues including, but not limited to, non-adherence to work hours, communication issues, and work product errors. (Statement of Facts, at Ex. G). At the

8

meeting, Mr. Banks was told that his progress and performance would be reevaluated in thirty days to determine the appropriate course of action. (Statement of Facts, at ¶ 28). Nevertheless, the Plaintiff again left work early without approval on July 8, 2013 and August 22, 2013. (Statement of Facts, at Ex. G).

For his part, the Plaintiff does not appear to deny that on at least some instances he failed to comply with iGov's attendance policy. Rather, the Plaintiff asserts that iGov enforced its attendance policy more harshly against him, an African American, than against other non-minority iGov employees. For instance, the Plaintiff identifies several employees and contractors who allegedly violated iGov's "core working hours" between September 3 and September 12, 2013, but who he claims were not reprimanded or terminated for their purported violations of iGov's attendance policy. (Response, at Ex. 4). The record does not contain any evidence regarding whether the referenced individuals violated iGov's dress code or were written up or reprimanded for submitting work product that contained errors.

### 5. Plaintiff's Failure to Meet iGov's Performance Expectations

During the term of his employment, the Plaintiff was reprimanded and written up multiple times for work product errors. (Statement of Facts, at Ex. G). For example, the Plaintiff was written up for errors contained in "Impact Analysis contract deliverable documents" and "multiple Slick Sheets." (Statement of Facts, at Ex. G). By late June 2013, Mr. Banks' supervisor, Sean Kenney, had received numerous complaints from other iGov employees regarding Plaintiff's subpar work performance. (Statement of Facts, at ¶ 26). As noted above, iGov met with Mr. Banks and issued him a Performance/Disciplinary Action Form on July 1, 2013. (Statement of Facts, at ¶ 27; Statement of Facts, at Ex. G). The Performance/Disciplinary Action Form outlined the

Plaintiff's job performance issues including, but not limited to, non-adherence to work hours, communication issues, and work product errors. (Statement of Facts, at Ex. G). At the meeting, Mr. Banks was told that his progress and performance would be reevaluated in thirty days to determine the appropriate course of action. (Statement of Facts, at ¶ 28). Thereafter, on August 22, 2013, the Plaintiff submitted a "Cisco 3560X 48-Port Switch document" that contained several errors, including improperly numbered section headings. (Statement of Facts, at Ex. G).

While the incidents discussed in the preceding paragraph are undisputed due to the Plaintiff's failure to respond to the Requests for Admissions, they do not constitute the entirety of the Plaintiff's alleged performance deficiencies. Rather, iGov contends that the Plaintiff submitted subpar work product on numerous occasions between February and September of 2013. For his part, aside from the undisputed performance issues discussed in the preceding paragraph, the Plaintiff vehemently disputes that his work product was subpar and has cited to approximately one dozen emails where he received favorable feedback regarding the quality of work product that he submitted or was involved in creating. (Response, at ¶ 5). Nevertheless, Mr. Banks has admitted elsewhere that he completed hundreds, if not thousands, of graphics for iGov. (Response, at ¶ 31).

> 6. *The Performance Improvement Plan and Mr. Banks' Termination from iGov*

On August 29, 2013, iGov presented the Plaintiff with a Performance Improvement Plan. (Statement of Facts, at Ex. G). The Plaintiff, for his part, refused to sign the Performance Improvement Plan. (Statement of Facts, at ¶ 41). The Performance Improvement Plan stated that Mr. Banks' job was in jeopardy based on performance issues including, but not limited to, non-adherence to work hours, communication issues

and work product errors. (Statement of Facts, at Ex. G). From that point onward, iGov contends that the Plaintiff continued to submit subpar work product. (Statement of Facts, at ¶ 42-45). The Plaintiff, for his part disagrees, and claims that even if his work product was not perfect, he was being singled out and nitpicked because iGov was looking for a reason to terminate him. (Response, at ¶¶ 42-45).

On September 12, 2013, iGov asked its employees to "dress casually" to assist the company with an outdoor activity. (Statement of Facts, at ¶ 46). The Plaintiff then reported to work wearing sweat pants and a cut off T-shirt. (Statement of Facts, at ¶ 47). Mr. Banks was sent home to change, and later that day iGov terminated the Plaintiff's employment. (Statement of Facts, at ¶ 47). The stated reasons for Mr. Banks' termination were persistent violations of iGov's policies, including core working hours and dress code, his inability to produce quality work product, and his unwillingness to properly communicate with supervisors. (Statement of Facts, at ¶ 48). iGov has not filled Mr. Banks' position as a technical writer, and has instead relied on the use of existing subcontractor technical writers. (Statement of Facts, at ¶ 50).

### 7.    The Human Resources' Inquiries

Approximately five months prior to his termination, on April 8, 2013, the Plaintiff submitted a fifteen page document to iGov's human resources' department inquiring as to a number of issues, which included difficulties interacting with co-workers, criticism he had received regarding the quality of his work product, his official job title, and his class schedule. (Statement of Facts, at ¶ 15; Statement of Facts, at Ex. N). On April 30, 2013, Mr. Banks sent an email to Kim Schmitt, iGov's Vice President of Human Resources stating that "[t]he work environment has improved a great deal and things are slowly blending into a cohesive corporate climate." (Statement of Facts, at ¶ 19).

In addition, on August 20, 2013, the Plaintiff sent an email to iGov employee, Joey Williams, stating that "I am being introduced to health concerns and this is becoming a toxic environment for me." (Statement of Facts, at ¶ 35). According to the Plaintiff, he was concerned about a health hazard being caused by a coworker who "sneezes all over his hands and then wants to come over and shake hands with the Plaintiff, this a NO NO." (Response, at ¶ 35). To remedy the situation, Mr. Banks ordered cleaning supplies and air purifiers, which iGov contends violated its supply ordering policies. (Statement of Facts, at ¶ 35).

In addition, on July 9, 2013, the Plaintiff sent iGov employee Fran Williams an email inquiry regarding whether the "8-5 Policy" only applies to "JUST ME or to all iGov employees in COC? And if it does apply to others, then why am I being micro-managed and 'singled out.'" (Response, at ¶¶ 36-37). Finally, on August 22, 2013, the Plaintiff sent an email to an iGov employee stating that he would not respond to another employee's email regarding an incident where Mr. Banks had left work early, and asked for "HR's position on 'Toxic Work Environment,' 'Harassment,' and treating all employees equally." (Statement of Facts, at ¶ 36). Notwithstanding the foregoing, the record does not contain any evidence that Mr. Banks notified anyone at iGov that he felt he was being "singled out" or harassed based on his race. Subsequent to his termination, on October 29, 2013, Mr. Banks filed a Charge with the EEOC alleging discrimination based on race and retaliation. (Statement of Facts, at ¶ 51).

## III.    Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Courts are properly cautious about granting summary judgment in

employment discrimination cases when issues of discriminatory intent are raised because intent is often difficult to discern in advance of trial." *Mack v. W.R. Grace Co.*, 578 F.Supp. 626, 630-31 (N.D. Ga. 1983). "Nonetheless, when an employer makes a convincing showing that it discharged an employee for non-discriminatory reasons and the discharged employee introduces no evidence that the non-discriminatory reasons proffered by the employer are pretextual and no evidence from which an inference of pretext can rationally be drawn, summary judgment for the employer is appropriate." *Id.* at 631. "A genuine issue of fact precluding summary judgment is one that can be maintained by substantial evidence," and a discharged employee cannot "rely on allegations in his complaint . . . or on promises or speculations that he may be able to prove discriminatory intent at trial." *Id.* Rather, "[h]e must be prepared to counter the employer's showing with an adequate offer of proof that the employer's reasons for discharge are in fact a pretext for discrimination." *Id.*

Moreover, while *pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," on summary judgment, a *pro se* plaintiff "must still meet the essential burden of establishing that there is a genuine issue as to a fact material to his case." *Osahar v. Postmaster Gen. of U.S. Postal Serv.*, 263 F.App'x 753, 761 (11th Cir. 2008). "Furthermore, a *pro se* litigant is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Day v. Allstate Indem. Co.*, 2014 WL 1158924, at *1 (N.D. Ala. Mar. 21, 2014). Accordingly, "[a] *pro se* plaintiff's allegations or conclusory statements are not by themselves sufficient grounds to deny a motion for summary judgment." *Brown v. U.S. Patent & Trademark Office*, 445 F.Supp.2d 1347, 1355 (M.D. Fla. 2006).

## IV.   Discrimination Claim

"Title VII prohibits an employer from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin.'" *Vickers v. Fed. Express. Corp.*, 132 F.Supp.2d 1371, 1377 (S.D. Fla. 2000) (quoting 42 U.S.C. § 2000e-2(a)). Discriminatory intent, within the meaning of Title VII, "can be established through either direct or circumstantial evidence." *Id.*

In his Response, the Plaintiff has not pointed to any direct evidence demonstrating that he was terminated because of his race, so the Court must consider whether there is sufficient circumstantial evidence of iGov's alleged discriminatory intent for the Plaintiff to survive summary judgment. Where the "plaintiff seeks to prove intentional discrimination through circumstantial evidence of the employer's intent . . . [the] [p]lainitiff has the initial burden of establishing a prima facie case of discrimination." *Id.* at 1378-79. "In race-discrimination cases, a plaintiff makes out a prima facie case when he shows by a preponderance of the evidence (1) that he is a member of a protected racial class, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class." *Flowers v. Troup Cty., Ga., Sch. Dist.*, 2015 WL 6081186, at *6 (11th Cir. Oct. 16, 2015).

"[T]he establishment of a prima facie case creates a presumption that the employer discriminated against a plaintiff on the basis of race." *Id.* "[T]he burden then shifts to the employer to produce a legitimate nondiscriminatory reason for the action taken against the plaintiff." *Id.* "Once the employer advances its legitimate, nondiscriminatory reason the plaintiff's prima facie case is rebutted and all presumptions drop from the case." *Id.*

The plaintiff then bears the "ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* Accordingly, merely establishing a prima facie case of racial discrimination "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion." *Id.* Rather, the "critical decision that must be made is whether the plaintiff has created a triable issue concerning the employer's discriminatory intent." *Id.* For the reasons set forth below, the Plaintiff has failed to satisfy this burden and, as a result, the Motion must be granted.

## A. Prima Facie Case for Discrimination

The Defendant does not dispute that the Plaintiff can satisfy the first and third elements of his prima facie case for racial discrimination. Specifically, the Defendant concedes that the Plaintiff is a member of a protected class and that he suffered an adverse employment action. However, the Defendant contends that the undisputed facts and record evidence demonstrate that the Plaintiff cannot establish the second and fourth elements because (i) he was not qualified for his position at iGov, and (ii) he was not replaced by someone outside of his protected class (or did not receive less favorable treatment that people outside of his protected class). The Court will address both of the Defendant's contentions in turn:

### 1. The Plaintiff's Qualifications

To establish that an employee was qualified to do the job, the plaintiff must show that he was performing his job "at a level which met his employer's legitimate expectations." *Vickers*, 132 F.Supp.2d at 1379. Stated differently, "an employee is considered to be qualified for a position if he or she meets the criteria that the employer has articulated for the position." *Ferrell v. Masland Carpets, Inc.*, 97 F.Supp.2d 1114, 1124 (S.D. Ala. 2000). "[A]n employee's mere subjective belief that he or she is quailed

to perform a particular job is insufficient to overcome objective evidence that the employee has in fact failed to meet the employer's legitimate [performance] requirements." *Id.* Moreover, the fact that an employee may receive positive comments or evaluations from low-level employees "does not mean that an issue of triable fact has been created whenever a higher-level supervisor subsequently gives that same employee a negative evaluation." *Id.*

In its Motion, the Defendant contends that the Plaintiff did not meet the criteria it had articulated for the position during his term of employment. As for those criteria, the record indicates that iGov expected the Plaintiff to possess strong writing skills, have an attention to detail, and produce work product that was substantially error-free, grammatically correct, and properly formatted. With regard to iGov's other policies and expectations, it is undisputed that (i) iGov's "core working hours" ranged from 8:00 a.m. to 5:00 p.m., (ii) employees were required to obtain approval from their manager to leave work early and to notify the manager in advance of anticipated tardiness or absence, and (iii) employees were expected to show up for work dressed in compliance with iGov's dress code.

It is further undisputed that Mr. Banks violated iGov's attendance and dress code policies, and that the Plaintiff was written up and reprimanded for submitting work product that contained errors. It is also undisputed that iGov met with Mr. Banks and issued him a Performance/Disciplinary Action Form based on his job performance issues, which included non-adherence to work hours, communication issues, and work product errors. Finally, it is undisputed that iGov presented the Plaintiff with a Performance Improvement Plan, which stated that Mr. Banks' job was in jeopardy based on performance issues

including, but not limited to, non-adherence to work hours, communication issues and work product errors.

For his part, the Plaintiff denies that his work-performance was subpar, and in support cites to several emails from co-workers that complement and/or acknowledge the quality of his work-product. According to the Plaintiff, the dozen or so emails he received that appear to compliment his work product create a genuine dispute as to whether he was qualified to perform his job. As to the undisputed violations of the attendance and dress code policies, the Plaintiff asserts that iGov selectively enforced those policies against him, but not against other non-minority employees.

Upon review of the undisputed facts and record evidence, the Court does not believe the Plaintiff has a created triable issue as to whether he was qualified for his job at iGov. Rather, it is undisputed that the Plaintiff violated iGov's attendance and dress code policies, and that he was written up and reprimanded for submitting work product that contained errors. While there is at least some evidence that the Plaintiff received favorable feedback regarding some of his work-product, the Plaintiff admitted to having created hundreds, if not thousands, of "graphics" during the course of his employment. Accordingly, the dozen or so instances of positive feedback cited to in the Response are insufficient to create an issue of fact regarding the Plaintiff's qualifications for the job, particularly given his other violations of company policy, which remain unrebutted. Taken together, the record evidence demonstrates that the Plaintiff failed to meet the

Defendant's expectations and, as such, the Plaintiff has failed to make a prima facie case for discrimination.[2]

### 2. The Defendant's Treatment of Similarly Situated Employees

As part of the Title VII plaintiff's prima facie case, the plaintiff must show that "he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class." *Flowers*, 2015 WL 6081186, at *6. Here, it is undisputed that iGov has not filled Mr. Banks' position as a technical writer. As a result, the Plaintiff can only make a prima facie case of racial discrimination by showing that similarly situated non-minority employees received more favorable treatment than he did.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "[I]n determining whether employees are similarly situated in cases involving allegedly discriminatory discipline, the Court evaluates whether the employees were involved in or accused of the same or similar conduct and were disciplined in different ways." *Ganpath v. Advance Stores Co.*, 2011 WL 6069336, at *8 (S.D. Fla. Dec. 6, 2011). Importantly, the "quantity and quality of the comparator's misconduct must be nearly identical to the plaintiff's misconduct, in order to prevent courts from second guessing employer's

---

[2] Notwithstanding the foregoing, if this were the only element of the Plaintiff's prima facie case that he had failed to establish, the Court might be inclined to err on the side of caution and permit the Plaintiff to submit this issue to a jury. However, as discussed below, the Plaintiff cannot establish the fourth element of his prima facie case for discrimination, nor can he point to any direct or indirect evidence of racial discrimination by the Defendant. As such, the Court's determination that the Plaintiff was not qualified for his job is conclusive of the Court ruling on the Motion.

reasonable decisions." *Id.* Accordingly, "similarly situated employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating conduct that would distinguish their conduct or the appropriate discipline for it." *Id.*

Here, the Plaintiff has failed to identify any other iGov employees who reported to the same supervisor as Plaintiff, were subject to the same standards governing performance evaluation and discipline, and engaged in conduct similar to that of the Plaintiff. As set above, it is undisputed that the Plaintiff was the only full-time salaried technical writer employed by the Defendant, and that the other technical writers used by iGov were subcontractors who were subject to different working terms and conditions than the Plaintiff. The distinction between the Plaintiff's role as a full-time salaried employee, and the other technical writers' roles as subcontractors, is critical, in the view of the Court, as other courts have determined that independent contractors and full-time, salaried employees are not similarly situated under Title VII. *See, e.g., Andrus v. Dooney & Bourke, Inc.*, 2015 WL 5797002, at *2 (D. Conn. Oct. 1, 2015) (determining that a full-time, salaried plaintiff was not similarly situated to an independent contractor in a Title VII suit); *Nowlin v. Lake City*, 2012 WL 831498, at *10 (D.S.C. Jan. 25, 2012) (determining that a full-time, salaried municipal court judge was not similarly situated to a part-time independent contractor); *Ahern v. Shinseki*, 2009 WL 1615402, at *14 (D.R.I. June 9, 2009) (determining that full-time employees were not similarly situated to independent contractors in Title VII action).

Even if the Plaintiff could show that there were other iGov employees who were "similarly situated" in terms of their employment duties, responsibilities, and compensation structure, the record does not contain any evidence that those individuals were also "similarly situated" in terms of their disciplinary history. For example, while there is some record evidence that other iGov employees may have violated the "core working hours" policy, there is no evidence that those same individuals also violated iGov's dress code, were written up and reprimanded for submitting work product that contained errors, or were ever issued disciplinary action forms or placed on performance improvement plans. As a result, the Plaintiff has not carried his burden of citing to evidence that similarly situated non-minority employees received more favorable treatment than he did and, as such, the Plaintiff has failed to make a prima facie case for racial discrimination.[3]

### B.    Legitimate Non-Discriminatory Reason for Termination

In holding that the Plaintiff failed to make a prima facie showing of racial discrimination, the Court is mindful that the Eleventh Circuit has previously held that the elements for a prima facie case under Title VII are "not onerous." *See Flowers,* 2015 WL 6081186, at *6. Accordingly, in an abundance of caution, the Court will assume *arguendo*

---

[3] The Plaintiff's failure to identify a "similarly situated" employee does not completely foreclose him from defeating summary judgment. Importantly, "[i]If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate *where no other evidence of discrimination is present.*" *Holifield*, 115 F.3d at 1562 (emphasis added). As a result, even in the event that a plaintiff cannot make the "usual prima facie showing" necessary to withstand summary judgment on a race discrimination claim, the plaintiff "may in some cases create a triable issue concerning the employer's discriminatory intent by showing a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Turner v. Fla. Prepaid College Bd.*, 522 F.App'x 829, 832 (11th Cir. 2013). The Plaintiff's ability to point to circumstantial evidence of racial discrimination is discussed in Section IV. C., below.

that there is sufficient record evidence from which a jury could infer that the Plaintiff was qualified for his job at iGov, and that he received less favorable treatment than similarly situated non-minority employees. Even so, the Defendant has proffered that it terminated Mr. Banks for failing to comply with iGov's policies regarding attendance and dress code, as well as for submitting subpar work-product. Even if the foregoing reasons for the Plaintiff's termination were incorrect, i.e. the Plaintiff never actually violated any of iGov's policies or submitted subpar work product, the proffered reasons for the Plaintiff's termination are legitimate and non-discriminatory.

As a result, the Court must find that the Defendant has met its burden of rebutting the Plaintiff's prima facie case of racial discrimination, which the Eleventh Circuit recently described as "a low bar to hurdle." *See Flowers*, 2015 WL 6081186, at *6; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (noting that "[t]he role of this Court is . . . not to act as a super personnel department that second-guesses employers' business judgments," and that "[o]ur sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.") As a result, the Plaintiff must present evidence that the Defendant's reasons for terminating him were a pretext for discrimination in order to withstand summary judgment.

### C. The Plaintiff's Evidence of Pretext/Circumstantial Evidence of Discrimination

As the Eleventh Circuit stated in *Flowers*, the burden shifting analysis "helps to filter out particularly obvious cases and works to frame more clearly the specific issues to be litigated." *Flowers*, 2015 WL 6081186, at *6. "It does not, however, relieve Title VII plaintiffs of their burden to put forth evidence of discrimination on the basis of race." *Id.* "This is because the ultimate question in every employment discrimination case involving

a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Wheatfall v. Bd. of Regents of Univ. System of Ga.*, 9 F.Supp.3d 1342, 1356 (N.D. Ga. 2014). For example, in the *Smith v. Lockheed-Martin Corp.*, the Eleventh Circuit reversed the trial court's entry of summary judgment despite the plaintiff's failure to identify a similarly situated employee because the plaintiff had offered compelling evidence of (i) his employer's motive to treat white employees less favorably than African Americans (ii) numerous incidents where the discipline of white employees varied considerably from that of black employees, and (iii) a discipline matrix created by his employer that explicitly considered employees' race in determining punishments for violations of company policy. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Based on a "convincing mosaic of circumstantial evidence" that the employer had engaged in intentional racial discrimination, the Eleventh Circuit held that the plaintiff's failure to identify a similarly situated employee did not necessitate summary judgment. *Id.*

Unlike in the *Lockheed-Martin* case, the undisputed facts and record evidence in this case do not create a "convincing mosaic of circumstantial evidence," and instead more closely resemble the facts of the Eleventh Circuit's recent decision in *Flowers v. Troup Cty, Ga., Sch. Dist*. In the *Flowers* case, an African American football coach presented evidence that he was treated more harshly than other white football coaches in the school district. *Flowers*, 2015 WL 6081186, at *2-3. In particular, the coach cited to evidence that, among other things, (i) he was the first African American football coach in the district since 1973, (ii) the school had performed an unusually intense background check on him before offering him the job, and (iii) the school specially adopted policies in

response to him being hired. *Id.* at *7. However, the district court determined that the mere fact the coach had been treated more harshly than white coaches, absent more, was insufficient to "create a mosaic of discriminatory intent." *Id.* at *5. On appeal, the Eleventh Circuit noted the school district's harsh treatment of the African American coach could possibly lead to an inference that the school district "had it in" for the plaintiff. *Id.* at *8. However, absent more than "conclusory say-so that would support an inference of racial discrimination," the Eleventh Circuit held that the evidentiary record did not support an inference that the employee's termination was racially motivated. *Id.*

Much like in the *Flowers* case, the Plaintiff has attempted to manufacture an inference of racial discrimination based merely on the fact that he may have been treated more harshly than non-minority employees. Even ignoring the fact that the Plaintiff has failed to identify a similarly situated employee, the mere fact that the Plaintiff was treated more harshly than other non-minority employees does not support a reasonable inference of racial discrimination. Stated differently, unlike in the *Lockheed-Martin* case, the Plaintiff has not "connected the dots" between the record evidence of possible selective enforcement of company policies by iGov and his allegations that iGov's conduct was racially motivated. Accordingly, while the plaintiff's failure to identify a similarly situated employee is not necessarily fatal to his case, his inability to do so, coupled with the indirect and conclusory nature of his allegations of discriminatory treatment, require the Court to enter summary judgment in favor of the Defendant.

## V. Retaliation

"Title VII's retaliation provision makes it unlawful to discriminate against any individual because she has opposed any practice made an unlawful practice by the Act." *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F.App'x 847, 852 (11th Cir. 2009). "To

23

establish a prima facie case of retaliation, the plaintiff must show: (1) that he engaged in statutorily protect expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Holifield*, 115 F.3d at 1566. "To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to [his] protest; however, the plaintiff must have had a reasonable good faith belief that discrimination existed." *Id.* Once the plaintiff establishes his prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Id.*

## A.    Prima Facie Case

There is no dispute that Mr. Banks suffered an adverse employment action and, as a result, can establish the second element of his prima facie case for retaliation. However, the Defendant contends that the undisputed facts and record evidence demonstrate that the Plaintiff cannot establish the first and third elements because (i) he did not engage in a statutorily protected activity, and (ii) any such activity was not a but for cause of Mr. Banks' termination. The Court will address both of the Defendant's contentions in turn:

### 1.    Statutorily Protected Activity

"A plaintiff engages in statutorily protected activity when he or she protests an employer's conduct" under "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). Accordingly, to constitute a statutorily protected activity, the action taken by the plaintiff must satisfy two requirements: (i) it must place the employer

on notice that the employee was "opposing a practice made unlawful by Title VII," and (ii) the complaint "must have been based on a good faith belief that her employer was engaged in unlawful discrimination." *Wheatfall*, 9 F.Supp.3d at 1353-54.

As to the first requirement, the Eleventh Circuit has found that "the employee must . . . at the very least, communicate her belief that discrimination is occurring to the employer." *Demers*, 321 F.App'x at 852. In so doing, "a plaintiff must do more than make a generalized complaint, but must show that he complained of discrimination for there to be statutorily protected expression." *See Lard v. Ala. Beverage Control Bd.*, 2012 WL 3292916, at *3 (M.D. Ala. Aug. 10, 2012). As a result, a plaintiff cannot satisfy the first element of making a prima facie case of retaliation by merely citing to evidence that he complained about issues with other employees, was unable to obtain adequate access to office resources, or took issue with organizational decisions. *See Id.*; *see also Foster v. Humane Society of Rochester & Monroe Cnty., Inc.*, 742 F.Supp.2d 382, 395 (W.D.N.Y. 2010).

Here, the only evidence in the record that could potentially constitute a "statutorily protected activity" are the three inquiries that Mr. Banks sent to iGov's human resources' department. In his first inquiry, Mr. Banks asked iGov for clarification regarding (i) disagreements he was having with other iGov employees and contractors (ii) iGov's unwillingness to provide him with a continued exemption from its "core working hours" program, (iii) issues he experienced relating to the quality of his work product, and (iv) his official job title. The two subsequent emails that Mr. Banks sent to iGov related to issues he had with a co-worker's sneezing and coughing, as well as the fact that Mr. Banks felt "singled out" due to iGov's enforcement of its "core working hours" policy. Read as a

whole, these three inquiries do not make any reference to racial discrimination at iGov. At best, the email in which Mr. Banks complained that he felt "singled out" communicated that the Plaintiff believed iGov was not enforcing its rules and policies in a uniform manner. However, even drawing all reasonable inferences in favor of the Plaintiff, Mr. Banks' concern that he was being "singled out," absent more, does not support an inference that he protested racial discrimination.

As to the second requirement, the plaintiff must show he "subjectively believed" that the employer had engaged in unlawful discrimination, and that his belief was "objectively reasonable in light of the facts and record present." *Wheatfall*, 9 F.Supp.3d at 1354. "While the opposed conduct need not be unlawful discrimination, it must be close enough to support an objectively reasonable belief that it is." *Id.* "To determine whether the opposed conduct is close enough to an unlawful employment practice, it is measured against existing substantive law at that time." *Id.* As a result, the ultimate inquiry is whether the plaintiff can point to record evidence that, at the time of his complaints, the employer had taken some action that a reasonable person would have considered to be unlawful discrimination under Eleventh Circuit law. *Id.* at 1355.

Here, the Plaintiff has failed to cite to record evidence that iGov took any actions that a reasonable person would have believed constituted unlawful discrimination. In fact, as set forth in Part IV, above, the Plaintiff has failed to make a prima facie case for racial discrimination under Title VII. Moreover, even if the Plaintiff could make out a prima facie case, there is ample record evidence that iGov terminated Mr. Banks for a legitimate, non-discriminatory reason, and the Plaintiff has failed to point to any other evidence of racial discrimination to demonstrate that iGov's proffered reason for terminating him was a

pretext. Stated differently, aside from the Plaintiff's "conclusory say so," the record is entirely devoid of any evidence of racial discrimination at the time the Plaintiff made his human resources' inquiries. Consequently, the Plaintiff cannot make a prima facie case for retaliation under Title VII, and summary judgment is appropriate.

### 2. Causation

To satisfy the third element "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Center v. Nassar*, 133 S.Ct. 2517, 2534 (2013). Prior to the Supreme Court's *Nassar* decision, a plaintiff could satisfy this requirement by showing, among other things, "close temporal proximity" between the protected activity and the adverse employment action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Following *Nassar*, however, a plaintiff must show more than temporal proximity between the protected activity and their termination. *Cf. Smith v. City of New Smyrna Beach*, 588 F.App'x 965, 981-82 (11th Cir. 2014). Instead, to establish a claim for retaliation, the plaintiff must present evidence "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S.Ct. at 2533.

With respect to temporal proximity, the Eleventh Circuit has held that a three month gap between the protected activity and the adverse employment action is insufficient to establish an inference of retaliation under Title VII. *See Embry v. Callahan Eye Found. Hosp.*, 147 F.App'x 819, 831 (11th Cir. 2005). Here, the record reflects that Mr. Banks submitted his first inquiry to human resources on April 8, 2013, and that he was terminated approximately five months later, on September 12, 2013. The five month gap between Mr. Banks' first human resources' inquiry and his termination is too great, even under pre-

27

*Nassar* precedent, to give rise to an inference that the Plaintiff was terminated for engaging in a statutorily protected activity.

As to the subsequent emails that Mr. Banks sent to iGov's human resources' department between roughly one and two months prior to his termination, the Plaintiff has failed to point to any record evidence that those inquiries had any bearing on his termination. Rather, as stated above, the Defendant has cited to record evidence that it terminated the Plaintiff due to violations of its attendance and dress code policies, and for submitting subpar work product. Importantly, the record also indicates that the some of the violations of company policy that led to Mr. Banks' termination occurred *after* he submitted his final human resources' inquiries. For example, it is undisputed that iGov placed Mr. Banks on a performance improvement plan more than a week *after* he submitted his final human resources' inquiry to iGov, and that Mr. Banks *subsequently* violated iGov's dress code on September 12, 2013, the same day he was fired. Under similar circumstances courts have found that such intervening acts of misconduct are sufficient to sever "the causal connection" between a complaint of alleged discrimination and an employer's decision to terminate the plaintiff's employment. *See Hankins v. AirTran Airways, Inc.*, 237 F.App'x 513, 521 (11th Cir. 2007). Since it is undisputed that Mr. Banks violated iGov's policies *after* he submitted his final human resources' inquiry, and *after* he had been placed on a performance improvement plan, no reasonable jury could find that Mr. Banks was terminated in retaliation for his human resources' inquiries.

## B. Legitimate Non-Discriminatory Reason for Termination

As set forth above, even if Mr. Banks could make a prima facie case for retaliation under Title VII, the Defendant has proffered a legitimate, non-discriminatory reason for its decision to terminate Mr. Banks. As a result, the Plaintiff bears the ultimate burden of

citing to evidence that the Defendant's proffered reason for termination was merely a pretext for unlawful retaliation.

### C. The Plaintiff's Evidence of Pretext/Circumstantial Evidence of Retaliation and Discrimination

Again, aside from the Plaintiff's conclusory statements and allegations, the record is completely devoid of any evidence that Mr. Banks was fired in retaliation for protesting racial discrimination. Stated simply, the Plaintiff has failed to identify any "concrete examples" of racial discrimination or retaliation at iGov. *Wheatfall*, 9 F.Supp.3d at 1357. Contrary to the Plaintiff's suggestion, the question is not whether iGov's actions would have been discriminatory if Mr. Banks' beliefs were true, i.e. that iGov terminated the Plaintiff because of its alleged bias against African Americans. *Id.* Rather, the question is whether a reasonable person could look at the objective evidence that Mr. Banks has presented and conclude that iGov's conduct was close enough to racial discrimination to imbue the Plaintiff's opposition with protection under Title VII. *Id.* Since Mr. Banks has failed to cite to any concrete examples of iGov's allegedly race-based conduct, it is impossible for a jury to find that Mr. Banks was terminated in retaliation for protesting racial discrimination at iGov. As a result, the Defendant is entitled to summary judgment on Mr. Banks' retaliation claim.

### VI. Conclusion

Accordingly, it is

**ORDERED** that the Motion is **GRANTED** as to Counts II and IV of the Complaint, and the Clerk of Court is directed to enter judgment for the Defendant and against the Plaintiff, to close this case, and to terminate any pending motions and reports and recommendations.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 27th day of October, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties